**Ex parte Clifford James KELLY.**

No. 69311.

Court of Criminal Appeals of Texas, En Banc.

Sept. 19, 1984.

William T. Reece, Jr., San Antonio, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

This is a post conviction application for writ of habeas corpus filed pursuant to Art. 11.07, V.A.C.C.P.

The record reflects that applicant entered pleas of guilty in trial court cause Nos. 83 Cr 1693 through 83 Cr 1695, for the offenses of aggravated sexual abuse, on October 11, 1983, and was assessed punishment by the Judge of the 289th District Court of Bexar County, at ten years confinement in the Texas Department of Corrections in each case, said sentences to run concurrently. No appeal was taken from these convictions, and time limits for filing either a motion for new trial or a notice of appeal have long since passed.

Petitioner maintains in this post conviction application that his pleas of guilty were involuntary because they were based on the erroneous advice of his trial counsel, Jessie Campos, and because of assurances from Campos that he (petitioner) would receive probation from the trial court.

On March 23, 1984, and on April 9, 1984, a post conviction evidentiary hearing was conducted in this cause, wherein petitioner was represented by newly retained counsel, William Reece. During this hearing, petitioner's mother testified that Jessie Campos was retained to represent the petitioner on the three cases mentioned, ante. According to the petitioner's mother, Campos told her that her son would not go to prison as a result of the charges. Additionally, petitioner's mother testified that even after petitioner was convicted and sentenced to ten years in prison in each case, Campos assured her that he (Campos) would apply for shock probation. She testified that Campos informed her that after petitioner had served one hundred days in prison, she needed to contact him and pay him more money and he would apply for shock probation.

Petitioner's brother testified that he heard Campos tell petitioner that he would get him off on probation. He further testified that even after petitioner had been convicted, Campos represented to him (petitioner's brother) that he would get petitioner out of the penitentiary on shock probation within one hundred twenty days.

Petitioner testified at the evidentiary hearing that Campos promised him that he would get him off on probation. He testified that he would not have pled guilty if Campos had not promised him that he would get probation. He further testified that he did not know that a judge could not grant probation in a finding of guilt for the offense of aggravated sexual abuse. See generally Art. 42.12, Sec. 3f, V.A.C.C.P. Petitioner further testified that, had he known all of these facts, he would have pled not guilty and would have insisted on a jury trial.

Jeff Scott, an assistant district attorney who was present when petitioner's guilty plea was taken, testified that Campos spoke with him repeatedly and kept trying

to get a recommendation for probation in petitioner's cases. Scott testified that he did not tell Campos that petitioner would not be eligible for probation and in fact informed Campos that the State would recommend ten years in the Texas Department of Corrections as a proper punishment.

Campos testified at the post conviction hearing and denied that he told petitioner that he would get him probation. Campos did testify, however, that he thought there was a good chance that petitioner would get shock probation. He further testified that although he was aware there was a statutory prohibition against granting probation or shock probation for aggravated sexual abuse, he felt like a trial judge might give probation to the petitioner anyway and that the State would not file an application for writ of mandamus to have such an order set aside. Campos admitted that he never told the petitioner that under the law he was ineligible for regular probation or for shock probation. Campos conceded that he filed an application for felony probation in the cause, but claimed that he did so as a trial tactic to enhance the petitioner's chances for shock probation at a later time. Campos averred that at the time of sentencing everyone knew that petitioner was going to receive ten years in the penitentiary rather than probation.

The record affirmatively reflects that Campos indeed filed a written application for felony probation, duly signed by petitioner, and that he brought the matter of probation to the attention of the trial judge during the taking of the guilty plea.

Pursuant to a request by Campos, the trial judge ordered a presentence investigation into the background of petitioner between the time the petitioner pled guilty and the actual sentencing on December 1, 1983. When the probation department returned the presentence investigation to the trial judge with an unfavorable recommendation, the trial judge then chose to sentence the petitioner to the Texas Department of Corrections. We must therefore assume that the trial judge was laboring under the misconception that probation was available to petitioner in these causes.

Most significantly, between October 11, 1983, when petitioner entered his pleas of guilty, and December 1, 1983, when petitioner was finally sentenced by the trial judge, Campos requested that petitioner's mother bring him more money in order that he might obtain shock probation for petitioner, to which request petitioner's mother complied.

We find the facts in the instant case closely parallel to those in *Ex parte Stansberry* (No. 69,274, Tex.Cr.App. delivered July 11, 1984). In *Ex parte Stansberry,* supra, the defendant contended that his attorney was ineffective by attacking an alleged involuntary confession and then waiving that error on appeal by advising defendant to plead guilty and sign a judicial confession, thereby precluding an appeal on the issue. At a post conviction hearing in *Ex parte Stansberry, supra,* the defendant testified that he had pled guilty soon after the trial court overruled his motion to suppress his confession, basing such plea on his trial counsel's advice that the merits of the pretrial motion would be addressed on appeal. The record reflected that the defendant entered his pleas of guilty on reliance on his attorney's incorrect advice concerning the appellate procedure. Since the defendant's pleas were induced by the understanding that the matters raised by his motion to suppress would be appealable, the plea was involuntary. See *Mooney v. State,* 615 S.W.2d 776 (Tex. Cr.App.1981).

The disposition of cases in this genre were succintly outlined by Judge Miller in *Ex parte Stansberry:*

"In several recent cases this Court has reversed convictions or granted relief, because of inaccurate advice by a defense attorney. In *Ex parte Young,* supra, we reversed defendant's conviction when the attorney incorrectly informed his client that he would be eligible for parole in three years on a fifteen year sentence for aggravated robbery when the client would be eligible for parole

only after five years. In *McGuire v. State*, 617 S.W.2d 259 (Tex.Cr.App.1981), the attorney incorrectly told the client that he could withdraw his guilty plea if the court gave greater punishment than the State recommended. In *Ex parte Burns*, 601 S.W.2d 370 (Tex.Cr.App. 1980), the attorney advised his client to plead guilty for a life sentence in order to avoid a death sentence, despite the fact that Texas had no valid capital punishment statute in effect at the time of the offense. [citation omitted]."

In the case at bar it is evident that trial counsel Campos either misunderstood the law as codified in Art. 42.12, Sec. 3f, supra, or, if his testimony at the post conviction hearing is to be believed, was pursuing a strategy that would have included the entry of an unauthorized judgment and sentence by the trial court. In either case, it would certainly seem that petitioner was misled to his detriment.

It is of particular note that, not only was the petitioner misled by Campos, but he was never told during admonishments on his guilty pleas that he was ineligible for probation. To the contrary, both trial counsel and the trial judge at least implicitly led petitioner to believe that he was eligible for probation and that he was in fact a serious candidate for probation.

We believe under the holdings of *Ex parte Stansberry*, supra, and *Ex parte Young*, 644 S.W.2d 3 (Tex.Cr.App.1983), that petitioner was induced to enter the pleas of guilty based on his attorney's misinformation, which was tacitly approved by the trial court.

The relief sought is granted. The judgments in trial court cause Nos. 83 Cr 1693 through 83 Cr 1695 are set aside and petitioner is ordered remanded to the Sheriff of Bexar County to answer the indictments in these causes. A copy of this order shall be sent to the Texas Department of Corrections.

It is so ordered.

ONION, P.J., concurs in this opinion.

W.C. DAVIS, J., dissents.